## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

**Shellany Ray,**

    Plaintiff,

**v.**

**Recovery Healthcare Corporation, Alcohol Monitoring Systems, Inc., Glenn Tubb, and The Riverside Company,**

    Defendants

**Case No.  3:19-cv-03055-G**

### THIRD AMENDED COMPLAINT

NOW COMES Shellany Ray, the Plaintiff herein, amending her complaint as permitted by the Court's Order, and alleging and stating as follows:

### Parties

1.  Plaintiff Shellany Ray is a resident of the City of Garland in Dallas County, Texas. She may be contacted through counsel.

2.  Defendant Recovery Healthcare Corporation (hereinafter "Recovery Healthcare") is a Texas corporation headquartered at 9090 N. Stemmons Freeway, Suite A, Dallas, Texas 75247.  Recovery Healthcare performs functions traditionally reserved by the government, namely the real-time monitoring of probationers, and as such it is frequently a state actor. Recovery Healthcare is a racketeering "person" as that term is used in 18 U.S.C. §1961(3).

3.  Defendant Alcohol Monitoring Systems, Inc. (hereinafter "AMS") is a

- 1 -

privately-held company headquartered at 1241 West Mineral Avenue Suite 200 Littleton, Colorado 80120. Like Recovery Healthcare, AMS performs functions traditionally reserved by the government, namely the real-time monitoring of probationers. As such it is frequently a state actor. AMS is a racketeering "person" as that term is used in 18 U.S.C. §1961(3).

4. Defendant Glenn Tubb is the chief executive officer of AMS and, as set forth below, a key leader of a racketeering enterprise. Defendant Tubb knowingly derives income from the racketeering enterprise. Defendant Tubb is a racketeering "person" as that term is used in 18 U.S.C. §1961(3).

5. Defendant The Riverside Company (hereinafter "Riverside") is a private equity firm with offices at 3333 Lee Parkway, Suite 700, Dallas, Texas 75219-5111 as well as other locations around the world. Riverside owns AMS and knowingly derives income from the racketeering enterprise. Riverside is a racketeering "person" as that term is used in 18 U.S.C. §1961(3).

### Jurisdiction and Venue

6. This Court has jurisdiction under 28 U.S.C. § 1331 because the Plaintiff brings federal claims pursuant to 42 U.S.C. §1983 and 18 U.S.C. §1964.

7. Venue is proper in this district and division under 28 U.S.C. § 1391(b)(2) because "a substantial part of the events or omissions giving rise to the claim occurred" in Dallas County, Texas.

### Facts

8. AMS produces an ankle monitor (a "SCRAM" device) that is supposed to

determine whether a wearer has consumed alcohol. Probationers and other users must wear the SCRAM device 24 hours per day, seven days per week. Once per day, they must connect the SCRAM Device with a special docking station that is connected to the internet and upload the monitoring data collected by the device throughout the day. Once the device is connected, the data is sent to a central data center in Colorado operated by AMS. There, the data is reviewed to determine if any monitoring "event" occurred that indicates that the wearer ingested alcohol.

9. Unlike blood alcohol monitoring, which directly detects the level of alcohol present in the blood stream, the SCRAM relies on transdermal alcohol monitoring, which operates by detecting the amount of alcohol that evaporates through the skin. Because the rate at which alcohol evaporates through the skin is significantly different than the rate at which alcohol is metabolized and detected in the blood stream, transdermal alcohol monitoring requires the use of an algorithm to approximate the blood alcohol content of the wearer based on the amount of alcohol vapor detected at the skin surface.

10. Because transdermal alcohol monitoring measures the amount of alcohol evaporating through the wearers' skin, the SCRAM device is by its design susceptible to detecting "false-positive" alcohol readings as a result of what AMS itself describes as "environmental alcohol." That is, alcohol vapors that wearers encounter on an everyday basis may come in contact with the SCRAM device and trigger a false positive.

11. Environmental alcohols take many forms, and many everyday products contain alcohol that evaporates upon exposure to air and can trigger a SCRAM device to detect alcohol vapors. For example, body spray, cologne, aftershave, hand sanitizer, household

cleaners (such as Windex), gasoline, and many other products that most individuals come across on a day-to-day basis contain alcohol that evaporates into the atmosphere.

12. Given the placement of the SCRAM device against the wearer's skin on his or her ankle, and the fact that the SCRAM device is designed to detect the presence of alcohol in the air surrounding the wearer, any environmental alcohol present near the device will lead to a report that alcohol has been detected, even if the wearer has not ingested any alcohol themselves.

13. Defendants AMS and Recovery Healthcare advertise to the public and to government agencies that the SCRAM device is capable of reliably determining the difference between alcohol vapors that are detected as a result of "ingested alcohol" and alcohol vapors that are detected as a result of "environmental alcohol." That claim is false, and AMS has long known that the claim is false. As set forth below, these Defendants falsely represented to the Plaintiff and others that its equipment could reliably and accurately determine whether users (like herself) had consumed alcohol.

14. AMS offers its devices and services through an integrated network of distributors, and Recovery Healthcare is such a distributor. Recovery Healthcare contracts with Dallas County to monitor probationers who have been convicted of alcohol offenses, and it provides those services to Dallas County in conjunction with AMS. Recovery Healthcare likewise knew that the SCRAM device and its related services were unreliable, but it knowingly made the same misrepresentations as AMS.

15. As the result of a conviction for driving while intoxicated in Dallas County in 2016, the Plaintiff was sentenced to community supervision and prohibited from

consuming any alcohol. The state court also ordered her to wear an ankle monitor, so she wore one of the Defendants' monitors and paid the monthly monitoring fee.

16. On December 25, 2017, the Plaintiff's husband sprayed Static Guard on the couple's bed sheets shortly before they used the bed. Soon thereafter, Defendant AMS sent a report to Dallas County probation officials indicating that the Plaintiff had consumed a large quantity of alcohol on that evening. The report was transmitted electronically via interstate wire from AMS's facilities in Colorado to probation officials in Texas.

17. Based on that report, Dallas County prosecutors filed a motion to revoke the Plaintiff's probation and incarcerate her, and the state court issued a warrant for her arrest on January 16, 2018.  The Plaintiff retained a criminal defense lawyer and arranged to turn herself in at a January 24, 2018 hearing.  At that hearing, the Plaintiff explained that her husband had used Static Guard on December 25, 2017, but that she had not consumed any alcohol. Her husband corroborated her story, but Defendants AMS and Recovery Healthcare insisted that Static Guard could not be the source of the alcohol reading. These Defendants instead assured prosecutors and the state court that there was only one explanation for the high alcohol reading, *i.e.*, the Plaintiff had consumed a large quantity of alcohol. Defendants AMS and Recovery Healthcare knew that their monitoring systems were flawed and unreliable, but their representatives failed to disclose those facts to the court, instead maintaining that the SCRAM readings proved that the Plaintiff had

consumed alcohol.[1] At the end of the hearing, the state court ordered the Plaintiff to attend a 12-step recovery program every day for 90 days and provide proof of attendance to her probation officer. This created a considerable limitation on the Plaintiff's ability to work.

18. Fortunately for the Plaintiff, an expert witness offered to prove that the December 25, 2017 readings from the SCRAM device could not possibly be the result of alcohol consumption. Forensic Criminalist Jan Semenoff of Industrial Training & Design, Ltd. agreed to waive her normal expert fee in exchange for the right to publish her findings about the Plaintiff's case, and the Plaintiff has attached Ms. Semenoff's report as Exhibit 1.  As set forth therein, the increase and the decrease in detected alcohol levels happened far too rapidly to be explained by human consumption. The SCRAM device monitors blood alcohol ("BAC") levels every 30 minutes, and it would be nigh impossible to consume enough alcohol for one's BAC to go from zero to 0.26 in 30 minutes. Furthermore, it would be physiologically impossible for the body to process alcohol as quickly as the device suggested. Instead, the detected alcohol levels are consistent with environmental exposure, just as the Plaintiff and her husband had said all along. After Ms. Semenoff's report was provided to prosecutors, they abandoned their efforts to revoke the Plaintiff's probation.

19. After this lawsuit was filed, the Plaintiff learned that Defendants AMS and

---

[1] After the initial false report on or about December 25, 2017, the subsequent misrepresentations and nondisclosures occurred between January 1, 2018 and May 7, 2018, when Ms. Semenoff submitted her report. The Plaintiff does not know the exact dates of the misrepresentations and nondisclosures nor the names of the AMS and Recovery Healthcare personnel involved because

Recovery Healthcare knowingly present false information to courts, prosecutors, and probationers regarding false positives and alcohol detection. The Plaintiff alleges that this practice is part of their business model, because most of the false positives are easily preventable and yet these Defendants have taken no corrective action despite numerous public warnings over the last ten years, *see, e.g.*, Bryan Polcyn and Stephen Davis, "Offenders threatened, jailed for 'false' alerts from alcohol-monitoring bracelets: 'I didn't do anything wrong!'", March 13, 2016 *Fox6Now* (https://fox6now.com/2016/03/13/alcohol-monitoring-bracelets-questioned/), Scott Henson, "Confronting SCRAM," January 15, 2010 *Grits for Breakfast* (https://gritsforbreakfast.blogspot.com/2010/01/confronting-scram.html), Scott Michels, "Remote Monitoring: Cheaper than Jail, but at what Cost?", January 4, 2010 *The Crime Report* (https://thecrimereport.org/2010/01/04/remote-monitoring-cheaper-than-jail-but-at-what-cost/), as well as a class-action lawsuit (more on that below). These Defendants have an incentive to keep reporting false positives because courts often order probationers to wear the SCRAM device for additional months or years (at a cost of $350-$400 per month) when alcohol consumption is reported. Most probationers, meanwhile, do not have the resources to hire an attorney and prove that the Defendants reported a false positive.[2]

---

that evidence is in the exclusive control of the Defendants.

[2] Two sets of facts support the Plaintiff's allegation that AMS and Recovery Healthcare are knowingly defrauding probationers as part of their business model. First, this complaint sets forth clear flaws in the SCRAM system that that the Defendants have known about for years that produce false positives. Despite numerous warnings, *infra*, and despite the fact that those flaws could be easily corrected, AMS has made no attempt to correct them. Second, and as described below, both AMS and Recovery Healthcare have deliberately concealed those flaws, and even

20. On February 28, 2017, plaintiffs Rosanne Hansen and Jennifer Oh filed a class action lawsuit against AMS in the U.S. District Court for the Central District of California based on false positives from the SCRAM device. *See Rosanne Hansen, et al. v. SCRAM of California, Inc., et al.*, Case No. 2:17-cv-01474 (C.D. Cal.). A true and correct copy of their Second Amended Complaint (hereinafter "Hansen Complaint") is attached as Exhibit 2, and the Plaintiff requests that the Court take judicial notice.  In that complaint, Ms. Hansen, Ms. Oh, and co-plaintiffs Linda Soltis, Brooke Hoffman, Patrick Guerrero, Micah Bailey, and Christina Bohnstedt explained in great detail how AMS generated false reports.  Hansen Complaint 18-37, ¶¶62-156. The Plaintiff incorporates by reference the allegations in Paragraphs 62-156 because AMS's false allegations against Ms. Hansen, Ms. Oh, Ms. Soltis, Ms. Hoffman, Mr. Guerrero, Mr. Bailey, and Ms. Bohnstedt over a period of years demonstrate a "pattern of racketeering activity" per 18 U.S.C. §1961(5).

21. The *Hansen* case was later dismissed, but on September 21, 2017 most of those plaintiffs re-filed their claims in the U.S. District Court for Colorado along with new plaintiffs Derrick Smith, Shiloh Irvin, Matthew Brudnicki, James Roche, Jr., Jennifer Johnston, Mike Spano, Torianna Bonds, Dakota Jones, Dan McCullough, Dusty Derigo, and Angel Gonzales. *See Bethany Lange, et al. v. Alcohol Monitoring Systems, Inc.*, Case No. 1:17-cv-02286 (D. Colo.). A copy of their First Amended Complaint (hereinafter "Lange Complaint") is attached as Exhibit 3, and the Plaintiff requests that

---

now they actively misrepresent the reliability of the SCRAM system. Accordingly, the issue here is not mere negligence, but intentional fraud.

the Court take judicial notice. In that complaint, the new plaintiffs provided additional details about how AMS generated false reports. Lange Complaint 25-27, 47-51, 54-61, 63-67, 69-74, 76-78, 80-81, 83-84, 86-87, and 89-93, ¶¶96-107, 189-203, 211-229, 230-241, 247-263, 291-298, 303-313, 317-329, 334-349, 347-353, and 359-375. The Plaintiff incorporates the foregoing paragraphs by reference because AMS's false allegations against Mr. Smith, Mr. Irvin, Mr. Brudnicki, Mr. Roche, Jr., Ms. Johnston, Mr. Spano, Ms. Bonds, Ms. Jones, Mr. McCullough, Mr. Derigo, and Ms. Gonzales over a period of years demonstrate a "pattern of racketeering activity" per 18 U.S.C. §1961(5).

22. As set forth in the Hansen Complaint and Lange Complaint, SCRAM device data is downloaded daily and sent to AMS headquarters for interpretation. Even as of the date of this amended complaint, AMS advertises on its website that it employs a "team of professionally trained analysts" to review reports of alcohol detection on SCRAM devices. The website further states as follows: "Drinking and tamper alerts are subject to rigorous data analysis conducted by our team of professionally trained analysts and our confirmation criteria is peer-reviewed, validated, and published." Those statements are false and deceptive. The AMS personnel who interpret the data do not have the medical, scientific, or engineering qualifications to distinguish a false positive from true alcohol consumption. Instead, at all times relevant AMS knowingly relied on minimum-wage employees without proper training or qualifications. If AMS's employees were properly trained and supervised, they would have known that it was physiologically impossible for the Plantiff's blood alcohol to surge so high and then drop so precipitously in such a short amount of time.

23. AMS not only failed to train and supervise its employees, it knowingly deployed a defective product. A properly designed software system would have determined, for example, that the readings detected by the Plaintiff's SCRAM device were outside the limits of human metabolism. AMS could design algorithms to greatly reduce the number of false positives, but it has not done so because false positives increase its revenues.

24. AMS has gone to considerable lengths to keep its corrupt money-making scheme under radar. In 2009, attorney Scott Holper of Las Vegas, Nevada represented a plaintiff, Kenneth Cooper, in a civil lawsuit against AMS (among others). *See Kenneth Cooper v. Total Court Services, Inc., et al.*, Case No. 2009-cv-00548-PMP-LRL (D. Nev.). Like the Plaintiff herein, Mr. Cooper alleged that his SCRAM device reported false positives and, as a result, he was arrested and lost his job. *Id*. After the *Cooper* case settled for an undisclosed amount, Mr. Holper began advertising his services to other probationers in Nevada who may have been harmed by SCRAM's false positives and related defects. On March 8, 2013, AMS filed suit against Mr. Holper and immediately sought to keep its complaint sealed. *See Alcohol Monitoring Systems, Inc. v. Scott Holper*, Case No. 2:13-cv-00399-GMN (D. Nev.). The Nevada court denied the motion to seal and explained that the complaint accused Mr. Holper of disclosing the existence of a settlement agreement as well as the amount of settlement. *See* March 26, 2013 Order (attached as Exhibit 4). AMS subsequently filed a heavily-redacted complaint (attached as Exhibit 5). In one of the few unredacted portions of that complaint, AMS included a photograph of a yard sign that Mr. Holper apparently had been posting near Nevada

courthouses: "IF YOU HAVE BEEN WRONGFULLY INCARCERATED IN NEVADA AS A RESULT OF SCRAM, YOU MAY BE ENTITLED TO IMMEDIATE FINANCIAL COMPENSATION. CONTACT US IMMEDIATELY FOR A FREE CONSULTATION." *Id*. 5, ¶22. AMS then claimed, based on that excerpt, that Mr. Holper violated the Nevada Rules of Professional Conduct and the Lanham Act by engaging in "false advertising." *Id*. 6, ¶¶25-26. The case later settled on undisclosed terms.

25. Recovery Healthcare knows that the SCRAM device and service are defective, and it knows that the defects result in false positives. Recovery Healthcare was named as a co-defendant with AMS in *Bethany Lange, et al. v. Alcohol Monitoring Systems, Inc.*, Case No. 1:17-cv-02286 (D. Colo.), *see* Lange Complaint 9, ¶28, ergo it was and is fully aware of the defects in AMS's products and services, but it colludes with AMS to conceal those defects and to keep reporting false positives.  Recovery Healthcare does this because, like AMS, it makes more money by reporting false positives.

26. Neither AMS nor Recovery Healthcare warn users or court officials about the dangers of false positives.  Instead, they fraudulently misrepresent the reliability of the SCRAM device and their services in order to induce probationers and court officials to use their services. In an undated blog post seen on April 5, 2021, Defendant AMS boasted about the reliability of its SCRAM system:

> Diagnostic test results have been reported in a host of independent field and laboratory testing studies over the past fifteen years. To date, peer-reviewed and published literature have shown SCRAM CAM to be a scientifically accurate and reliable transdermal alcohol monitoring instrument. Furthermore, the literature shows little to no evidence of any false positives in field and laboratory settings.

See "False Positive Rates for SCRAM CAM: Transparency of Diagnostic Test Statistics," https://www.scramsystems.com/scram-blog/false-positive-rates-scram-cam/. The foregoing statement is misleading at best because AMS failed to disclose the fact that the SCRAM system was *designed* to produce false positives. Likewise, the statement is misleading because it fails to disclose numerous false positives that were already known to AMS. *See, e.g.*, Hansen Complaint 18-37, ¶¶62-156 and Lange Complaint 25-27, 47-51, 54-61, 63-67, 69-74, 76-78, 80-81, 83-84, 86-87, and 89-93, ¶¶96-107, 189-203, 211-229, 230-241, 247-263, 291-298, 303-313, 317-329, 334-349, 347-353, and 359-375 (describing how AMS falsely reported that Roseanne Hansen, Jennifer Oh, Linda Soltis, Brooke Hoffman, Patrick Guerrero, Micah Bailey, Christina Bohnstedt, et al. consumed alcohol). Finally, it fails to disclose the fact that some courts have rejected the SCRAM system as unreliable.

27. Defendants AMS and Recovery Healthcare fraudulently represent to probationers and court officials that the SCRAM device is court-certified and that their analyses are reliable as evidence. On their respective websites, both AMS and Recovery Healthcare describe the SCRAM system as "court validated." Likewise, a product brochure jointly produced by AMS and Recovery Healthcare describes the SCRAM system as "court validated."[3] That statement is misleading at best. As noted in the Hansen

---

[3] As of the date of this amended complaint, the brochure is linked to the Recovery Healthcare website and can be found at https://215hsy2rfftjldrt02wgoxkc-wpengine.netdna-ssl.com/wp-content/uploads/2019/08/SCRAM-CAM-product-sheet.pdf. On information and belief, the Plaintiff alleges that AMS and Recovery Healthcare were using that brochure or a substantially similar one as of January 1, 2016. Specifically, the Plaintiff alleges on information and believe

Complaint, some courts have expressly found that the SCRAM device is not reliable, and that it is not widely accepted in the scientific community. *See* Hansen Complaint 10-13, ¶¶30-38. Courts in Michigan, Minnesota, and California have determined that SCRAM reports were not reliable, *id.*, but AMS and Recovery Healthcare fraudulently concealed that information from probationers, other courts, and the public. Furthermore, the SCRAM device cannot distinguish between ethanol alcohol (*i.e.*, drinking alcohol) versus other forms of alcohol. *Id*. The Defendants instead rely on AMS's untrained and unqualified personnel to interpret the results of a defective algorithm.  None of this information was disclosed to the Plaintiff.[4] Instead, Defendants AMS and Recovery Healthcare led her to believe that the SCRAM device could reliably determine whether a

---

that AMS's and Recovery Healthcare's brochure and their respective websites were falsely advertising the SCRAM system as "court validated" not later than January 1, 2016. At the same time, AMS and Recovery Healthcare failed to disclose (1) the known defects in the SCRAM system and (2) the fact that some courts had expressly rejected the SCRAM system as unreliable.

[4] The Plaintiff alleges on information and belief that none of this information was disclosed to Dallas County probation officials when Recovery Healthcare was proposing its services and negotiating its contract with the county. The Plaintiff further alleges on information and belief that AMS assisted Recovery Healthcare in selling the SCRAM system to Dallas County, because the two work together closely (*e.g.*, developing a joint sales brochure). The Plaintiff alleges these facts on information and belief because Defendants AMS and Recovery Healthcare are in possession and control of the evidence that would set forth the details regarding the contract between Recovery Healthcare and Dallas County. In support of these allegations, the Plaintiff notes that Dallas County likely would not have contracted with Recovery Healthcare if it had known that Recovery and AMS were knowingly deploying a defective product / service designed to produce false positives. Alternatively, if the county had contracted with Recovery Healthcare despite knowing of such defects, it almost certainly would have disclosed the information to the Plaintiff and other probationers. Likewise, the state court and state prosecutors almost certainly would not have accepted the 2017 SCRAM report about the Plaintiff so readily if Recovery had disclosed the known defects in the SCRAM system. It is worth noting that Recovery Healthcare and AMS both had been sued prior to the time that the Plaintiff was accused of consuming alcohol, *see* ¶¶ 20 and 21, *supra*, thus both companies were already on notice of the various defects in the SCRAM system, yet they never disclosed these known defects to the Plaintiff, the prosecutors, or the state court. Instead, AMS reported with seeming certainty that the Plaintiff had consumed alcohol.

user had consumed alcohol.

28. Another critical defect in the SCRAM system is the needless delay between the time that an alcohol "event" is reported to AMS and the time that the user is notified that alcohol has been detected. *See* Lange Complaint 17-19, ¶¶66-73. If the Plaintiff had been timely notified that alcohol was detected, she could have obtained a blood test to show definitively that she had not consumed alcohol. Instead, she was not notified until several days *after* alcohol was detected, therefore her only corroborating evidence was her husband's testimony. Had the Plaintiff been able to provide conclusive exculpatory evidence, the state court likely would not have ordered her to daily 12-step meetings. The Defendants had been warned that the delayed reporting time was a danger to users, *id.*, and they knew that the design flaw could easily be corrected, but they did not correct the problem because the false positives increased their revenues.

29. The Plaintiff alleges on information and believe that when representatives of AMS and Recovery Healthcare met with Dallas County officials to sell alcohol-monitoring services, they knowingly misrepresented the SCRAM system to be reliable, and they never disclosed its known defects. *See* fn. 2, *supra*. She alleges this because to this day, despite numerous media reports and lawsuits, AMS and Recovery Healthcare continue to advertise the SCRAM system as "court validated" and reliable, and because they fail to disclose (1) adverse legal rulings; (2) known defects in the SCRAM system; and (3) the deliberate scheme to produce false positives. A technician from Defendant Recovery Healthcare met with the Plaintiff in late November of 2016 at the company's office in Dallas to enroll the Plaintiff in the monitoring system, but that technician never

disclosed the SCRAM system's known defects, much less the fact that they were designed to produce false positives.[5] The Plaintiff alleges that the technician, acting as an agent of AMS and Recovery, had a duty to disclose the following at that November 2016 meeting, but did not:

(a) The SCRAM system had an established history of reporting false positives;

(b) The SCRAM system (particularly its algorithms) does not distinguish between alcohol consumption and environmental alcohol;

(c) AMS personnel are not trained to distinguish between alcohol consumption and environmental alcohol;

(d) Some courts had previously determined that the SCRAM system was unreliable; and

(e) The SCRAM system deliberately delays notification of alcohol detection to probationers, and it does so to prevent probationers from getting blood alcohol tests to prove their innocence.

Those same disclosures should have been made on the following occasions:

(a) When Defendant Recovery was selling its services and negotiating its contract with Dallas County Officials (*see* ¶27, fn. 2, *supra*);

(b) When Defendants AMS and Recovery jointly transmitted the allegations of alcohol consumption to the probation department on or about December 25, 2017;

(c) When Defendants AMS and Recovery subsequently assured state prosecutors and the state court before and after the January 16, 2018 hearing that the alcohol detection was accurate.

---

[5] The Plaintiff does not know the name of the technician or the exact date, but she would note that Defendant Recovery Healthcare is in possession of the evidence regarding that meeting, and she expects to be able to discover the name and date either in Recovery Healthcare's initial disclosures or in discovery. Likewise, the Plaintiff does not know the names of the AMS and Recovery Healthcare personnel who were responsible for (1) selling SCRAM services to Dallas County; (2) transmitting the alcohol consumption alert on or about December 25, 2017; and (3) verifying alcohol consumption to the court and prosecutors between December 25, 2017 and the time the motion to revoke was withdrawn. That information lies within the exclusive control of Defendants AMS and Recovery Healthcare.

Defendants AMS and Recovery were state actors, and under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny they had a duty to disclose exculpatory evidence, *e.g.*, known defects in the SCRAM system as well as the fact that other courts had previously rejected the SCRAM system. From December 25, 2017 until the time that the motion to revoke was withdrawn, however, neither AMS nor Recovery Healthcare disclosed the foregoing exculpatory evidence to the Plaintiff, her counsel, the state court, or the state prosecutors. Similarly, AMS never disclosed the exculpatory evidence to Roseanne Hansen, Jennifer Oh, Linda Soltis, Brooke Hoffman, Patrick Guerrero, Micah Bailey, Christina Bohnstedt, et al., and it did not disclose the exculpatory evidence to the respective defense attorneys, courts, or prosecutors. The Defendants therefore engaged in common-law fraud, wire fraud, and mail fraud by deliberate omission or concealment. The fraud and racketeering activities will almost certainly continue unless the Court acts to enjoin them.

## Claims

### Civil Rights Claims

30.   All previous paragraphs are incorporated by reference as if fully set forth herein.

31.   The Plaintiff brings claims against Defendants AMS and Recovery Healthcare under 42 U.S.C. § 1983 for violations of her Fourteenth Amendment right to due process. Defendants AMS and Recovery Healthcare were state actors insofar as they contracted with the state to perform government functions.   As a result of their actions, the Plaintiff was restrained in her liberty and forced to pay unnecessary attorney fees.   Furthermore,

the Plaintiff was baselessly subjected to prosecution without probable cause.

32. The Plaintiff brings claims against Defendants AMS and Recovery Healthcare under 42 U.S.C. § 1983, and specifically the stigma-plus-infringement doctrine, for damage to her reputation. As set forth below, the Plaintiff suffered significant damage to her reputation as a result of the violations of her constitutional rights.

33. The Plaintiff brings claims against Defendants AMS and Recovery Healthcare under 42 U.S.C. § 1983 for violations of her Fourth and Fifth Amendment rights, as incorporated by the Fourteenth Amendment, because the Defendants caused her to be detained and her liberties restricted without probable cause. The Defendants, as state actors, failed to conduct "an investigation that was reasonable under the circumstances." *Barfield v. Louisiana ex rel. Louisiana Dept. of Justice*, 325 Fed. Appx. 292, 296 (5th Cir. 2009), citing *Evett v. Deep East Texas Regional Narcotics Trafficking Task Force*, 330 F.3d 681 (5th Cir. 2003) and *Vance v. Nunnery*, 137 F.3d 270 (5th Cir. 1998). Instead, Defendants AMS and Recovery knowingly deployed a product and service that was *designed* to produce false allegations against probationers.

34. The Plaintiff brings claims against Defendants AMS and Recovery Healthcare under 42 U.S.C. § 1983 for interfering with her ability to defend herself in state court. By intentionally delaying notification to the Plaintiff that alcohol had been detected, they interfered with her right to petition the state court for redress of grievances. In particular, they intentionally impaired her ability to present a defense in response to the state's motion to revoke her probation, thus violating her rights under the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, and the Fourteenth

Amendment Due Process Clauses. *See Waller v. Hanlon*, 922 F.3d 590, 601 (5th Cir. 2019). In addition to the retrospective violation, they are violating her same rights prospectively insofar as she is still a user of the SCRAM system. *Id.*

Racketeering

35. All previous paragraphs are incorporated herein by reference.

36. The Plaintiff brings claims against Defendants AMS, Recovery Healthcare, Tubb, and Riverside under 18 U.S.C. §1964 for damage to her property, including lost income, attorney fees expended, and damage to her professional reputation.[6] *See Livingston Downs Racing Ass'n Inc. v. Jefferson Downs Corp.*, 192 F. Supp. 2d 519, 543 (M.D. La. 2001)(reputational damage was basis for RICO claim) and *Alden v. Allied Adult & Child Clinic, L.L.C.*, No. CIV. A. 01-371, 2001 WL 1444981, at *1 (E.D. La. Nov. 14, 2001)(same), both citing *Khurana v. Innovative Health Care Systems*, 130 F.3d 143 (5th Cir.1997), vacated on other grounds sub. nom., *Teel v. Khurana*, 525 U.S. 979, 119 S.Ct. 442, 142 L.Ed.2d 397 (1998).

37. The racketeering enterprise is an association-in-fact comprised of AMS and various local companies that contract to provide alcohol-monitoring services to various government entities throughout the United States. AMS itself generally does not contract directly with government entities or probationers. On its website, however, AMS lists scores of companies around the United States, including Recovery Healthcare, that effectively serve as subcontractors to provide SCRAM services directly to government

---

[6] The Plaintiff works in a medical office, where her reputation for propriety is essential.

entities and probationers.[7] Recovery Healthcare thus acted as an agent of AMS at all times relevant to this lawsuit. As described above, AMS and its affiliates (such as Recovery) fraudulently misrepresent the reliability of the SCRAM system both to government entities (*e.g.*, Dallas County) and probationers (*e.g.*, the Plaintiff) nationwide, and they have done so for more than ten years. Likewise, they have conspired together to fraudulently conceal defects in the SCRAM system during that same period, all for the purpose of extending probationers' terms and thereby generating more monthly revenue. AMS and its affiliates (including Defendant Recovery Healthcare) have repeatedly and systematically used the U.S. mail and interstate wires to maintain and promote the fraudulent scheme nationwide, thereby affecting interstate commerce and engaging in mail fraud (18 U.S.C. § 1341) and wire fraud (18 U.S.C. § 1343), both of which are predicate RICO acts. *See* 18 U.S.C. § 1961(1). On or about December 25, 2017, for example, an employee of Defendant AMS transmitted a fraudulent report that the Plaintiff consumed alcohol via interstate wire from Colorado to Texas. The Plaintiff further alleges that the false alcohol consumption reports set forth in the Hansen Complaint and Lange Complaint were transmitted via interstate wire from Colorado to California and other states.[8] On information and belief, the Plaintiff alleges that AMS and Recovery Healthcare use the U.S. mail and interstate wires in their

---

[7] Defendant AMS is, in essence, the hub of the association-in-fact, and the local companies are the spokes. The Plaintiff does not have details about the contractual relationship between AMS and its affiliates (e.g., Defendant Recovery Healthcare) because that information is in the exclusive control of Defendant AMS and the affiliated companies. The employees of AMS and the local affiliates, and particularly their executive officers, are participants in the racketeering enterprise.

[8] The Plaintiff does not yet know the identities of the AMS employees who sent the false reports

marketing campaigns to courts and other government entities (*e.g.*, to transmit the brochure referenced in ¶27, *supra*), and to generally conduct the affairs of the enterprise.[9] AMS's and Recovery Healthcare's marketing campaigns (1) fraudulently conceal defects in the SCRAM system and (2) fraudulently portray the SCRAM system as reliable. Furthermore, AMS and Recovery Healthcare derived and continue to derive a significant portion if their income through a "pattern of racketeering activity," 18 U.S.C. § 1962, namely by defrauding probationers such as the Plaintiff. Based on the facts set forth in this complaint, the Plaintiff alleges that AMS, Recovery Healthcare, and other local affiliates have conspired to defraud probationers like the Plaintiff, and they have knowingly and routinely used the U.S. mail and interstate wires in furtherance of that scheme.

38. Defendant Tubb is the CEO of AMS and the leader of the racketeering enterprise. He has been a senior executive with AMS since 2002. "Prior to being named CEO, he served as Senior VP of Products, where he managed all aspects of product development and delivery, including Design Engineering, Product Management, Software Development, Network Operations, Manufacturing, and Logistics." https://www.scramsystems.com/our-company/leadership/glenn-tubb/. During his tenure, Defendant Tubb oversaw the development and deployment of the SCRAM system, and he directed its development so that it would produce false positives in order to produce

---

because that information is within the exclusive control of AMS and Recovery Healthcare.
[9] All SCRAM alcohol consumption reports sent outside of Colorado – whether fraudulent or not – are initially sent via interstate wire. On information and belief, the Plaintiff alleges that subsequent and more detailed reports of alcohol consumption are generally sent via U.S. mail.

additional revenue, namely by forcing probationers to use the SCRAM system for longer periods of time. As CEO of AMS, Defendant Tubb manages the overall racketeering enterprise and works with affiliates like Recovery Healthcare to provide services to government entities and probationers. At all times relevant, he was fully aware of the fraudulent scheme outlined in this complaint, and he managed the SCRAM system such that it would continue to produce false positives.

39. Defendant Riverside acquired AMS in 2014. On information and belief, the Plaintiff alleges that Riverside was aware of the racketeering scheme in 2014 because, as part of its due diligence, it would have reviewed lawsuits against AMS such as the one described above in Paragraph 24. Likewise, it would have been aware of media reports regarding false positives such as those described above in Paragraph 19, and in 2017 it would have learned about the litigation described above in Paragraphs 20 and 21. On information and belief, the Plaintiff alleges that Riverside conspired with AMS to continue the fraudulent scheme described in this complaint.

Deceptive Trade Practices

40. All previous paragraphs are incorporated by reference.

41. The Plaintiff brings claims against Defendants AMS and Recovery Healthcare for violations of the Texas Deceptive Trade Practices Act, *see* TEX. BUS. & COMMERCE CODE § 17.42, et seq. The Defendants falsely advertised their product / services, misrepresented the nature and quality of their product / services, and engaged in unconscionable business practices. As set forth above, Defendants AMS and Recovery Healthcare knowingly misrepresented the reliability of the SCRAM system and

fraudulently concealed its known defects. They further engaged in unconscionable business practices such as designing the SCRAM system to report false positives, thereby forcing probationers to keep using their services.

Tort Claims

42. All previous paragraphs are incorporated herein by reference.

43. The Plaintiff brings common-law claims of negligence, gross negligence, and strict liability against Defendants AMS and Recovery Healthcare. Those Defendants knowingly marketed and sold defective products and defective services, and they failed to warn the Plaintiff and other users about the dangers of those products and services.

44. The Plaintiff brings common-law fraud claims against Defendants AMS and Recovery Healthcare insofar as they conspired to deceive her and did deceive her into subscribing to and relying on their services, primarily by failing to disclose information that they had a duty to disclose. The Plaintiff brings a common-law fraud claim against Defendant Riverside because it conspires with Defendant AMS to keep the fraudulent scheme going, and it knowingly derives income from the fraudulent scheme. The Plaintiff brings a common-law fraud claim against Defendant Tubb because he directs the fraudulent scheme and knowingly derives income from it.

45. The Plaintiff brings common-law claims for intentional infliction of emotional distress against Defendants AMS and Recovery Healthcare. The Plaintiff is a committed Christian and had made enormous strides in overcoming her alcohol problem, a fact that was known to her family, friends, and fellow church members. The false allegation of alcohol consumption was humiliating to the Plaintiff and it generated great fear that her

probation would be revoked and that she would be sent to prison for seven years, even as she and her husband were trying to start a family.

**Relief Requested**

46. The Plaintiff seeks actual damages, punitive damages, costs, attorney fees and all other relief available by law or equity. The Plaintiff specifically requests that the Court enjoin Defendants AMS and Recovery Healthcare from (1) engaging in false advertising; (2) offering defective products and services; (2) providing governmental services in ways that are known to cause civil rights violations, *e.g.*, by offering products and services in ways that are known to increase the number of false positives. Likewise, the Plaintiff asks the Court to enjoin Defendants AMS, Recovery Healthcare, Tubb, and Riverside Corporation from participating in or deriving income from racketeering activities.

**THE PLAINTIFF DEMANDS A JURY TRIAL.**

**Respectfully submitted,**

**/s/ John E. Leslie**
John E. Leslie
State Bar No. 12231400
JOHN LESLIE | PLLC
1805 West Park Row Drive, Suite C
Arlington, Texas 76013
(817) 505-1291 Phone
(817) 505-1292 Fax
*arlingtonlaw@aol.com email*

**/s/ Ty Clevenger**
Ty Clevenger
Texas Bar No. 24034380
P.O. Box 20753

Brooklyn, New York 11202-0753
(979) 985-5289
(979) 530-9523 (fax)
*tyclevenger@yahoo.com*

**Attorneys for Plaintiff Shellany Ray**

## CERTIFICATE OF SERVICE

I certify that a copy of this document was filed electronically with the Court's ECF system on April 5, 2021, which should result in automatic notification to all counsel of record.

/s/ **Ty Clevenger**
Ty Clevenger