UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

SHELLANY RAY,                    )
                                 )
            Plaintiff,           )
                                 )          CIVIL ACTION NO.
VS.                              )
                                 )          3:19-CV-3055-G
RECOVERY HEALTHCARE              )
CORPORATION, et al.,             )
                                 )
            Defendants.          )

**MEMORANDUM OPINION AND ORDER**

Before the court is the plaintiff Shellany Ray ("Ray")'s Motion for

Reconsideration (docket entry 75) ("Motion").  For the reasons set forth below, the

motion is **DENIED**.

I.  BACKGROUND[1]

This suit arises out of Ray's required use of an ankle monitor (known as a

"SCRAM device") designed to determine whether Ray consumed alcohol in violation

of the conditions of her probation.  Original Opinion at 1.  The defendants operate

the SCRAM device.  In short, Ray alleges that the SCRAM devices were faulty and

that, due to such faults, she was wrongfully arrested for alcohol consumption in

---

[1]     The background is shortened significantly.  A full exposition of the
factual and procedural history of this case can be found in the court's initial opinion.
*See* Memorandum Opinion and Order (docket entry 57) ("original opinion").

violation of preexisting probation terms. *Id.* at 3-4.  After receiving the allegedly false alcohol report, state prosecutors moved to revoke Ray's probation. *Id.* at 4.  Ray turned herself in at a January 24, 2018 hearing. *Id.*  As a result of this hearing – which Ray describes as "preliminary" – the state court "modified" the terms of Ray's probation to include mandatory attendance at a 12-step program. *See* Defendant Recovery Healthcare Corporation's Appendix in Support of Motion to Dismiss and Brief in Support (docket entry 43) ("APPX") at 55.  However, before a full hearing as to whether (1) Ray actually violated the terms of her probation, and (2) Ray's probation would be revoked, state prosecutors withdrew their motion.  Original Opinion at 5.

Among other grounds, Ray sued the defendants under 42 U.S.C. § 1983. *Id.* at 10.  The defendants argued, *inter alia*, that Ray's claims were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  Under *Heck*, "the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.  The Fifth Circuit has interpreted "conviction or sentence" to include "deferred adjudication" such as probation. *DeLeon v. City of Corpus Christi*, 488 F.3d 649 (5th Cir. 2007).  In so concluding, the *DeLeon* court looked beyond the literal language of *Heck* and instead considered whether, "viewing [deferred

adjudication] as a final judicial act," the policy goals of *Heck* would be undermined if deferred adjudication were not considered a "conviction or sentence." *Id.* at 654-56. Under this rubric, the Fifth Circuit concluded that "although the Texas courts have in all circumstances held that [deferred adjudication] orders are not convictions, they have been accorded finality, for instance in the appellate context . . . ." *Id.* at 655. The court further explained that "although there is no finding of guilt [in the imposition of deferred adjudication], there is at least a judicial finding that the evidence substantiates the defendant's guilt, followed by conditions of probation that may include a fine and incarceration." *Id.* at 656.  Accordingly, the imposition of deferred adjudication is a "conviction or sentence" under *Heck*.

In Ray's case, this court defined the inquiry as follows: "The key issue [regarding whether *Heck* bars Ray's § 1983 claims] is whether a meaningful distinction can be drawn between the initial decision by the state court to impose probation – which was held in *DeLeon* to be a 'conviction or sentence' for purposes of *Heck* – and a modification of probation in the form of additional conditions (*e.g.*, a 12-step program)." Original Opinion at 30.  This court concluded that no such distinction could be drawn.  The court began its analysis by noting that "it appears that the state court modified Ray's probation as a result of Ray's alleged alcohol consumption by requiring her to attend the 12-step program." *Id.* at 32 (citing TEX. CRIM. PROC. Art. 42A.751(d)).  The court's decision ultimately rested on the same

rationale as expressed in *DeLeon*: viewing the 12-step program as a final judicial act proximate to a critical piece of the state criminal justice system, the practical purposes of *Heck* would be undermined by allowing a federal damages action. This was so for three reasons. First, a modification to an order of probation "carries the essential qualities of finality," *id.* at 35, in that the imposition of the program "was wholly within the state court's discretionary power, could not be appealed, and otherwise effectively left Ray no other option than to comply." *Id.* at 36. Second, "as in *DeLeon*, although no finding of 'guilt' was made," the state court held a hearing and concluded that the evidence was sufficient to justify some change or addition to Ray's terms of probation (*i.e.*, to include the 12-step program). *Id.* Finally, probation revocation hearings carry the indicia of criminal proceedings, further supporting the policy rationale of *Heck*. *Id.* at 37-38; see *DeLeon*, 488 F.3d at 652 ("The *Heck* court held that a civil tort action, including an action under section 1983, is not an appropriate vehicle for challenging the validity of outstanding criminal judgments.").

## II.   ANALYSIS

In her motion, Ray argues that the court erred in concluding that Ray's probation was modified. Motion at 2-3. "Instead, the 12-step program was a condition of release under Tex. Crim. Proc. Art. 42A.751 rather than a modification of probation under Art. 42A.752." *Id.* at 3. Ray supports this assertion by arguing that the state court never formally held that Ray violated the terms of her probation,

which appears to be true.  Motion at Exhibit 1 ¶ 8.  Rather, the state court hearing was merely "preliminary" and, therefore, the 12-step program is a "condition of release" under Art. 42A.751 rather than a modification under Art. 42A.752.  Motion at 3.  In Ray's view, Art. 42A.752 "deals with a *permanent* adjudication of whether a probationer violated his or her terms of probation," whereas Art. 42A.751 "deals with the court's response to an *initial* allegation of a probation violation."  Plaintiff's Reply in Support of Motion for Reconsideration (docket entry 79) ("Reply") at 3.  The thrust of Ray's argument is an analogy between the "preliminary" nature of the state court's order here and other conditions of pretrial release for which, admittedly, *Heck* presents no barrier.

Ray's motion is denied for three reasons.  First, contrary to Ray's argument, the 12-step program is a "modification" rather than a "condition of release."  The state court itself viewed the 12-step program as a "modification" of Ray's terms of probation.  APPX at 55.  Although the state court did not specify under which Article it acted, the state court issued an "order modifying the conditions of community supervision" and modified Ray's probation pursuant to "the Community Supervision law of the State of Texas."  *Id.*  Additionally, even if this court viewed the state court's actions through the lens of Art. 42A.751 (rather .752), it is far from clear that – despite the state court's own interpretation of its actions – the 12-step program should be understood as a "condition of release" rather than a "modification."  This

is because Art. 42A.751 simply does not address "conditions of release."  Instead, it specifically contemplates probation modifications, among other actions, regarding alleged violations of probation.  *See* Art. 42A.751(a) ("At any time during the period of community supervision, the judge may issue a warrant for a violation of any condition of community supervision . . . ."; .751(d) ("After a hearing without a jury, the judge may continue, extend, modify, or revoke the community supervision.")).

Second, even assuming that Ray is correct that (1) there is meaningful daylight between Art. 42A.751 and .752 hearings, (2) the state court operated under .751, and (3) the state court did not technically "modify" Ray's probation despite the explicit language of its order, the policy reasons underlying *Heck* would still extend to bar a § 1983 action in this case for many of the same reasons expressed in the opinion.  First, the state court's action was a "final judicial act" within the meaning of *DeLeon*.  The state court's action carry the essential qualities of finality (*e.g.*, "[t]he requirement that Ray attend the 12-step program is 'final' in the sense that it was wholly within the state court's discretionary power, could not be appealed, and otherwise effectively left Ray no other option than to comply.").  Op. at 36.  Second, although the state court made no specific finding that Ray violated the terms of her probation, the state court nevertheless held a hearing ("preliminary" or otherwise) regarding the alleged violation and concluded that the evidence presented (*i.e.*, the positive but allegedly false alcohol report) was sufficient to require Ray to attend the

12-step program (a "modification" to her probation or otherwise). This is nearly identical to the initial imposition of probation in *DeLeon*. In that case, "there [was] no finding of guilt" by the state court before it imposed probation. 488 F.3d at 656. Instead, "there [was] at least a *judicial finding that the evidence substantiates the defendant's guilt*, followed by conditions of probation . . . ." *Id.* (emphasis added). Here, even if we assume that the state court did not definitively conclude that Ray violated the terms of her probation, it nevertheless held a hearing, considered evidence that Ray violated the terms of her probation, and decided that the 12-step program was warranted in light of that evidence. Thus, although Ray makes much of the "preliminary" nature of the hearing and that the state court never definitively concluded that Ray violated her probation, the situation is very close to that presented in *DeLeon*.[2] Furthermore, a contrary holding would create a senseless formality whereby a plaintiff cannot sue for the initial imposition of probation but

---

[2]     Ray's circumstances differ in at least two respects from a pretrial detention hearing, bail hearing, or other hearing in which a state court may order "conditions of release." First, in this case, the state court held a hearing wherein it considered evidence (however preliminarily) that Ray violated her probation and obviously concluded that some additional probation term was necessary in light of that evidence. This is unlike a bail or other pretrial detention hearing in which a court generally does not consider evidence that the accused actually committed a crime. Second, the state court's action here occurred within the framework of a preexisting "conviction or sentence" – that is, of Ray's initial deferred adjudication. Viewed in this light, the 12-step program (even if not a modification) is part and parcel of the original imposition of probation. In a pretrial detention or bail hearing, on the other hand, the court considers whether detention is warranted regarding a wholly new infraction, separate from the framework of any preexisting sentence or conviction.

could sue for any subsequent, "preliminary" change to that probation.

Stated differently, the exact basis on which the state court acted was not necessary to this court's original decision.  At bottom, the state court changed the conditions of Ray's probation after a hearing in which state prosecutors presented evidence of Ray's violation.  Allowing a federal damages action in cases such as this could undermine the "broad discretion," *Licon v. States*, 2020 WL 373093 at *2 (Tex. App. – Eastland, Jan. 23, 2020 no writ), of state trial courts to issue orders effectuating an order of deferred adjudication, even if that order is predicated on a finding that is "preliminary."  Allowing a § 1983 action in this case would therefore challenge the policies animating *Heck* and *DeLeon*.  See *Heck*, 512 U.S. at 484 (explaining interests in avoiding parallel litigation over the issues of probable cause and guilt, the strong judicial policy against the creation of two conflicting resolutions arising out of the same transaction, and the importance of finality and consistency to criminal judgments).

Finally, Ray's interpretation of the state court's action as a "condition of release" is untenable.  In this regard, it is significant that the state court acted pursuant to "the authority conferred by the Community Supervision law of the State of Texas."  APPX at 55.  The Texas Code of Criminal Procedure has an entirely separate provision governing bail and other pretrial conditions of release.  See TEX. CRIM. CODE PROC. Arts. 17.40-.49.  Among these statutes are the procedures for bail,

conditions related to victim or community safety, drug and alcohol testing, curfew, etc.  The state court did not cite these provisions in its order.  Furthermore, few – if any – of these provisions require the state court to hold a "hearing" before the it imposes bail or other condition of release.  *See, e.g.*, Arts. 17.031 (release on personal bond), 17.15 (rules for fixing amount of bail), 17.40 (conditions related to victim or community safety), 17.44 (home confinement), 17.441 (conditions requiring motor vehicle ignition interlock).[3]  In Ray's case, however, the state court held a hearing as required by the community supervision law of Texas.  And this distinction is not merely technical: holding a hearing in which evidence is considered and a form of punishment rendered – however preliminary – implicates the policy rationale underlying *Heck* (*i.e.*, "the policy of finality that prevents the collateral attack of a criminal conviction once the matter has been litigated").  *Ballard v. Burton*, 444 F.3d 391, 397 (5th Cir. 2006).

## III.  CONCLUSION

For the reasons set forth above, the motion is **DENIED**.

---

[3]    Nor does the 12-step program resemble traditional "conditions of release" that are intended to ensure "the safety of the community," such as ignition locks, alcohol monitoring systems, or home confinement. *See* Motion at Exhibit 1 ¶ 6.

- 9 -

**SO ORDERED**.

August 13, 2021.

_____
A. JOE FISH
Senior United States District Judge